Our fourth case for today is Bell v. Taylor. I believe it's Mr. Bell we will hear from. Thank you Chief Judge Wood. I would like to reserve five minutes for my report. Thank you very much. My name is Rich Bell and I'm the appellant in this matter. I am the photographer that took both of the photos of downtown Indianapolis and registered them with the U.S. Copyright Office. So Mr. Bell can I ask you whether in your opinion we have a final judgment here? I understood you to be saying that the District Court made a mistake in simply ignoring the declaratory and injunctive aspects of your case. That's correct. But if you think there's no final judgment then we have no appellate jurisdiction and we would just have to send it back to the District Court to finish up. If you think the District Court ruled against you without saying anything about it on declaratory injunctive relief then maybe we do have a final judgment but you lost on those points. I need to know what your position is since it affects our jurisdiction. Well Your Honor, I certainly believe that the court erred and it does require reversal as the Second Circuit said in the case of Davis v. Gap. So when you say the court made a mistake though do you mean in failing to resolve part of the case or do you mean in resolving it against you? No, failing to resolve it. Well that makes it sound like there's no final judgment which is not something we have any choice over. There's certainly nothing interlocutory about the part of the case that was resolved. So I mean against. No, I understand that but the final judgment rule requires resolution of all claims against all parties. That's correct. Now what I will say is if you look at Judge Pratt's decision at the very end, this is page 11 of the appendix, at the very end she says defendants motion for summary judgment filing number 81 is granted. Mr. Bell's claims are dismissed and then there's tie-up things. Well if you look at filing 81 that's entitled a motion for summary judgment and then oddly enough the memorandum in support of it is entitled partial summary judgment. So there's some ambiguity here but and I gathered that no rule 58 judgment was entered either but construing it if you if you read this as a whole and think the district judge is finished with the case and whether saying a word about it or not is just denying declaratory and injunctive relief then at least we do have a final judgment. I'll leave it there, let you argue the merits of your appeal but it's and I would like appellees to address this as well but it's a problem on this record. Okay let me. So as you said you were starting to say you've got in such in essence you've got the O'Brien and Cheatham part and they did use the daytime photo that you attached and then you've got the other part of the case the Taylor part and there you attached the wrong photo. That's correct your honor I did make a mistake and attached the wrong photo. Because he used the nighttime one right? That's correct but let's point out what the obligation of the defendant is to do in a case like that. First of all the Taylor makes the argument that. You're arguing the Taylor case right now. Correct. Okay Taylor makes the argument that my case is baseless. Well in a case that's baseless or the wrong defendant the case of in color versus chemical corp Tenneco Palmers the late Judge Perry for the District of South Carolina recognized that the defendant has a duty under Rule 8c to plead an answer to the complaint that the plaintiff has identified the wrong defendant which is certainly analogous to this situation. That's but it's it's not the same though it's basically what you're what you're saying is that he had to tell you that you had chosen the wrong picture. That's correct your honor and in fact let me let me point out what their affirmative defense is. But this isn't an affirmative defense it's a failure of proof. It's it's not an affirmative defense that you identified the wrong picture it's something you have to prove that they infringed your copyright on this particular picture that's not enough it doesn't have anything to do with an affirmative defense. Well because essentially they're saying we never used that picture and that ergo we didn't infringe your copyright on it well that's the end of it. What they what they say in their answer is failure to emotion in their motion to dismiss that they rely on affirmative defense that they don't even say what the reason is. No they don't. Yes. They're The first affirmative defense is the plaintiff failed to state a claim upon which relief. Yeah which is already not an affirmative defense. I mean they totally mislabeled that failure to state a claim on which relief can be granted is just a regular defense. Well it's a demur in the common law. In Heller the court said that you have to give your reasons for. Well eventually you do but you know in this instance what they've done is they've alerted the court to the fact that they never used the photograph that you're pointing to. How can they have infringed something that they didn't use the fact that they may have used something else that you had requires a different lawsuit or you know essentially a different lawsuit. Well let me refer to the Dubinsky case where what the court said in that case the Seventh Circuit said was that if there are a frivolous lawsuit which this certainly would be a frivolous lawsuit that the plaintiff at a very early stage, in fact it says a party defending a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly. But that's because Rule 11 specifically requires that before you're going to make the motion for fees under Rule 11 you have to tell the other side this is frivolous withdraw it. That's not, they didn't make a Rule 11 motion, they made a, they amounted to a motion for summary judgment saying you didn't have any evidence that they had infringed the particular photo that you had. But I don't understand then why the rule would be different for answering a complaint versus. Well they answered the complaint by denying that they had infringed your photo, that's all they had to do. They didn't have to say oh by the way we might have infringed some other photo and here it is. All they had to do was say we didn't infringe your photo that you identified in your complaint. Well I guess I'm missing something. So you know I would like you to turn to a different point and this really pertains to the O'Brien and Cheatham part of the case. You submitted an affidavit saying that you have sold this daytime photo of Indianapolis on, I guess you didn't say when, but you said you've made sales of it, your price is $200, you attached the price list from your website. That's correct. And the district court thought that wasn't specific enough. But were you ever asked in any form to provide greater details of these sales? It turns out that I was, I received a motion for, and we argued about whether or not I was going to give over the data, okay, and I was asking for a protective order and the defendant would not give me a protective order. So you didn't want to put client names down and the number of sales. No, I didn't want to put the credit card information, which they'd asked for. They'd asked for the tax information, they asked for the credit card. I was willing to give it to him on a lawyer-to-lawyer basis, but I certainly wasn't willing to give it to one of the witnesses in the case so they could turn around and give it off to somebody else. Okay, so I guess that didn't get resolved then if there was some discovery dispute about whether there should be a protective order or did it? It did not get resolved until actually a day or two before the judge issued a final order. How did it get resolved at that point? She entered an order that was not appealable on July 25th, if I got my dates correct. It doesn't matter the date, what did the date? Okay, and I had 30 days to appeal that decision. This is the magistrate judge who's dealing with discovery? No, it turns out the magistrate ordered I'd appeal that to the judge because I wanted a protective order. That was my big thing with the judge was to get a protective order and I was unable to get a protective order. So she denies the request? That's correct. Okay, well if you want to take a little bit for rebuttal, this would be the time to do it. I'll wait until then. Okay, that sounds fine. Mr. Nelson. May it please the court, my name is John Nelson. I represent the appellees in this matter, Your Honor. So you're also representing O'Brien and Cheatham? Yes, Mr. Taylor, Mr. O'Brien, and Ms. Cheatham. And I would like to address some of the points raised by Mr. Bell. But before you do that, I mean I actually have two questions about this case. The one question is that I have serious problems with the district court's belief that his affidavit and for this photograph, it's not a huge value, but it's $200. But that leads me to my second question. I am utterly baffled by this litigation because it sounds to me, looking at the price list, that for the price of $200, you could have gotten a perpetual license to use this photograph. And so, I mean, it's not my business to tell people what to litigate, but it seems like a very strange case to me. In many respects, you're correct. The problem with the affidavit statements is failure to provide, from the way I see it, specificity. Why did it have to be specific? He's testifying from his own personal knowledge. They're his photographs. He's the seller. It's not even like he has a price I charged. It's perfectly competent evidence. You know, you could depose him and say, you know, how often did you sell? You could seek more detail, but I don't get why this isn't perfectly competent evidence that he'd sold and what the price was. Well, there was never any evidence of a willing buyer in this case. He says he sold it for $200. Why do you need the buyer? I mean, could there have been more evidence? Of course, there could have been more evidence, but I don't see why it's essential to, all we're trying to do is establish that there's a market value for this picture. And he says, yeah, I sold it. I sold it for $200. You could have impeached him. You could have said, gee, really sure you sold it? You know, maybe he doesn't tell the truth. You know, whatever people do, but I just am, I don't know where in the law the requirement is to produce the invoice and checks or credit cards or dates or the names of the buyers or anything like that. Well, I mean, that information was requested and the answer we received was these issues are not, or the information sought is not necessary. I understand that you asked for it and maybe he should have gotten it or maybe there should have been a better understanding about redacting some of things like credit card numbers and giving the rest of it to you because you certainly could have made your case without a credit card number. You don't need that. But I, with all of that said, I don't know why his affidavit that he sold it for a certain amount of money doesn't stand as competent evidence that he sold it for a certain amount of money. And he supplements it with the webpage. Well, as far as that goes, the protective order that he filed was on the last day that discovery was due. It was not briefed. The motion itself did not set forth any grounds for the protective order. If it had, I could see that position. In this case, it just seems like there's been a stonewalling in terms of turning over evidence that is very germane to this case. But did the judge decline to consider the affidavit as a discovery sanction or did the judge say that the affidavit just plain wasn't good enough? The court said basically that the affidavit was not good enough. Okay, so then is that the equivalent of saying that I'm on a witness stand and you're asking me about a product of mine and I say I sold it to Judge Wood for 50 bucks. Is that testimony admissible? That would be admissible, but in this case we don't even have that. Well, he said in his affidavit that he sold it for $200. To who? I understand. That would be a good basis to impeach him with. I sold it to somebody for $200. And you could impeach him like, who's the person? Well, I don't know. Where's the affidavit? Well, where's the invoice? Well, I don't have it here. And then you argue to the judge, well, this is just not reliable enough for you to rely on. But it's kind of seemed like the Judge Pratt was saying that his testimony wasn't good enough, period. I think that's problematic. I think without, again, without some kind of specific example. I mean, he cites the Payne case where the Payne versus Pawley, and in Payne they point to Edward Gill and the City of Lake Forest as basically a broad allegation as to damages is not entitled to deference on the basis that it's a conclusory statement. And we need a specific instance. That's not what we have here. We have an affidavit that says I sold it and my price was $200. So you could say, okay, one. You know, maybe we won't give you the benefit of the doubt on a number greater than one. And so, you know, he wins his case and he gets $200 from you for goodness only knows how much time on your part and his part to get that $200. But at least he establishes the principle. It's copyrighted. He's got his certificates from the Copyright Office. Copyrights of photographs have been a very difficult field, as you may know, if you do copyright law. But I don't see why it's not just, I'm a photographer and I was injured. It was, I sell these things and I did get a proper copyright for it. The price list he identified didn't go on the internet until three months. Right, but maybe he just didn't have a website. A lot of small businesses operate, you know, out of their kitchen for a while and then maybe you get a website eventually. So I'm not sure that the fact the internet site was late, given the nature of the affidavit, is enough to say that there were no sales or that it wasn't really $200. I mean, he has testified via the affidavit. He has said he's prepared to testify under oath that he made sales and that the price was $200. And that not only that, but what do you get for the $200? You get a perpetual license to use this picture on your websites or wherever it is, brochures, wherever it is you use it. I guess it's a disagreement then over the definition of specificity and how much specificity is required under Rule 56. Can I ask you a question about this appellate jurisdiction issue that Judge Wood raised? So, did the district court just forget about, did the district court rule on the declaratory judgment request and deny it or did the district court not rule on it? The district court did not rule on it. Okay, so then how is there a final judgment? This case was catched in the framework of the Mackey case, the Dash case, where a copyright defendant could receive a judgment by basically illustrating that even in the event the copyright owner were to establish ownership, that he could ultimately recover nothing. That's the framework we approached it with here. In those cases... But it would still be beneficial to a copyright holder in that kind of situation to get a declaratory judgment that this thing is mine and it's copyrightable. Well, that goes to what Cazel has said about declaratory judgment that basically is for no other reason than it gives the copyright owner a sense of good feeling or emotional satisfaction. Declaratory judgments are issued all the time in intellectual property disputes where there's an allegation and part of the complaint of infringement and part of the relief sought is, you know, I want to stall, you know, you from infringing in the future, your voluntary act that for the time being you're not using the picture isn't very reassuring, and others from doing it. So the Declaratory Judgment Act always has a little bit of a, you know, it's just kind of hanging out there quality to it, but it's pretty concrete in copyright patent cases. Patent owners also seek declaratory judgments. So it's troublesome and the other thing that's really troublesome about it is that the memorandum supporting this filing number 81 is couched in terms of partial summary judgment, which would have been fine, you know, if the district judge had wanted to handle a partial summary judgment on this and then return to other aspects of the case, she was absolutely entitled to do that, but she doesn't seem to do that. Well again, that's basically using the Mackey and the Dash cases as models. They're not excuses for lack of a final judgment for an appellate court. I mean it would be one thing if the district judge had said I'm not going to grant you declaratory relief because it's just, you know, to make you feel good, therefore your request for declaratory relief is denied. Then there would be some, then there would be finality, but instead you seem to agree that it just wasn't ruled on. No, it wasn't ruled on. The issue of ownership was not addressed. There were three issues, basically preemption, damages, and the claim involving Mr. Taylor. The copyright ownership issue per se was not addressed. One other, I had filed yesterday a supplemental authority citing to Jaffke v. Dunham, standing for the proposition that an appellee may seek to have the judgment of the trial over the district court affirmed on any grounds that has support in the record, and on that I would point to the section of the brief dealing with the bad faith, basically the discovery-related behavior that the court had made several rulings on and had noted. Okay, well it's certainly a principle we're familiar with and you have a little bit of time if you have anything else you'd like to say, but it's up to you. I think we've... You're not required to fill up all the time, let me assure you. If you have said everything that you would like us to hear, we are appreciative of that and you may stand on your brief. I think I will relinquish this. All right, thank you so much. Anything How much time does he have? Four minutes. Mr. Bell, I want to ask you about your affidavit. Yes. In your affidavit, did you say that your photo had been for sale? Yes, in fact it's... Okay, did you also say in your affidavit that you sold it to anyone? Not specific. Yes. Does your affidavit represent that you made sales? Yes. You want to point me to that? Yes. So I was kind of going to ask the same question. It's paragraph 9, Mr. Bell, I think on A31. It's worded in a way that you could kind of take it two ways, I think. It says plaintiff has sold for several years and currently sells the perpetual commercial rights to display digital download version of his So when somebody says I sell this for $200, they might mean I have actually sold it for $200 or they might be actually saying that I'm offer that I offer it for sale for $200, not that I actually sold it. Well, I realize that I'm not allowed to talk about anything that's not a record, okay, but I can tell you unequivocally that... You meant the former, I actually sold it. Has sold. I have sold. Actual sale was completed, not just that it was offered. Right. Currently sells, of course, has to mean offers. And I do have an email. No, it's not in the record. I can't talk about it. No. Did you offer, you said you had lawyer-to-lawyer concern. Did you ever offer to the other side just the number of sales as opposed to specifics and tax numbers and credit card? I mean, did you say in 2011 I had three sales? Did you give any specificity other than your position that the affidavit reflects sales? I did not give any specificity to anybody. I have produced in another case that's not a part of the record. Did you offer to the judge who's trying to interpret this affidavit any specificity beyond the language we have to deal with in the affidavit? No, I, but and let me give you some background. I wanted a protective order. That was the critical thing and I did not want to have, there was one witness in this case that had a tendency to be significantly bad. Okay, that's the way I'll say it. And I was not comfortable with having that in her hands. Okay, and so I was willing to give all of the documents to the lawyers and I was willing to have the defendants be able to see the documents and all of my sales. I mean, but you didn't want the client to see it. Can I just follow up on Judge Flom's question? So did you ever tell the judge, it's not just that I sold it for $200, I sold it 14 times for $200 from the period of 2011 to 2013 or whatever. Did you ever give anything more specific about numbers of sales, period of time, anything like that, other than this affidavit that was just read here? No, but I have sold more than that. Okay, so why not, I guess? I mean, in other words, I get what you're saying about not wanting to give, you know, the details of who the customers are and their credit card numbers and so on. Why wouldn't you have, since you knew that there was this dispute out there and there was this dispute over them getting the documents and you hadn't resolved that yet, why wouldn't you have said in the affidavit, I've made 48 sales of this for $200 over the last three years? Or at least proffered to the judge. You know, my concern is that there'll be disclosure of confidential information, but I can tell you informally that this is the ballpark. Well, my pleadings do indicate that I talked about not wanting to give that kind of information. It's in the motion to, in the response to the motion, in my motion for... But not the next step, saying, but on an informal basis, you know, which... No, I did not. All right. Thank you. All right, thank you very much, Mr. Bell. Thanks as well, Mr. Nelson. We'll take the case under advisement.